UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>THE GEORGETOWN SYNAGOGUE – KESHER ISRAEL CONGREGATION, *et al.*<br><br>*Defendants*. | CASE NO. _____ |

**PLAINTIFFS' MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Plaintiffs Jane Doe, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, Jane Doe 8, Jane Doe 9, Jane Doe 10, Jane Doe 11, Jane Doe 12, Jane Doe 13, Jane Doe 14, Jane Doe 15, Jane Doe 16, Jane Doe 17, Jane Doe 18, Jane Doe 19, Jane Doe 20, Jane Doe 21, Jane Doe 22, Jane Doe 23, Jane Doe 24 and Jane Doe 25 (the "Victims"), by and through their undersigned counsel, respectfully request that this Court grant them leave to proceed under pseudonyms. Plaintiffs make this request to prevent the disclosure of their identities, which would cause them irreparable harm. The relevant facts, points, and authorities supporting this Motion are set forth herein.

FACTUAL & PROCEDURAL BACKGROUND

This action arises out of an unfathomable breach of trust by a respected rabbi and religious scholar, Bernard "Barry" Freundel, Ph.D., who used surveillance equipment to capture naked images of his students and congregants during a sacred religious ritual. Freundel was the

1

rabbi for Defendant The Georgetown Synagogue – Kesher Israel Congregation ("Kesher Israel"), the founder and principal of Defendant The National Capital Mikvah, Inc. ("NCM"), the longtime chair of the Geirus Committee within Defendant the Histadruth Horabonim Deamerica – Rabbinical Council of America, Inc. (the "RCA"), and a longtime professor at Defendant Towson University. Plaintiffs bring this joint action individually against Kesher Israel, NCM, RCA, and Towson University.

A "mikvah" is a pool of water in which members of the Jewish faith totally immerse themselves while they are completely naked. Traditionally, the mikvah has been used by Orthodox Jewish women to purify themselves prior to resuming marital relations with their husbands after their menstrual cycles and childbirth. The mikvah also plays an important role in an individual's conversion to Judaism, as immersion in the mikvah is the final step in the conversion process. In recent years, survivors of sexual assault have also used the mikvah to help them heal emotionally and spiritually from the pain associated with sexual assault.

The vast majority of the wrongful acts giving rise to this action were performed in a mikvah (the "Kesher Israel/NCM Mikvah") that is nominally owned and operated by NCM in a building adjacent to Kesher Israel. Upon information and belief, NCM is substantially controlled by Kesher Israel and was built using its funds and assets. The Kesher Israel/NCM Mikvah, like most mikvahs, has an adjacent changing room where participants shower and change prior to immersing.

Plaintiffs Jane Doe, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, and Jane Doe 8 (the "University Victims") are students or employees at Towson University and other universities in Maryland and the District of Columbia who are devoted to their Jewish faith or studies and who attended such institutions because of their reputation for

excellence and diversity. The aforementioned University Victims were excited to enroll in various Jewish studies classes taught or co-taught by Freundel. Several of the University Victims told Freundel that they are not Jewish and are not interested in converting into Judaism.

Despite this, in the course of the University Victims' education, Freundel pressured or required each of them to participate in an unconventional immersion ritual at the Kesher Israel/NCM Mikvah. He also invited several of the University Victims to attend services at Kesher Israel on numerous occasions and to join his family and the Kesher Israel community at religious dinners, including Friday night Sabbath dinner and Passover Seder, held in Freundel's home at the Kesher Israel Rabbinical Residence. The University Victims were thrilled to be part of a thriving and intellectual religious community and to be using their religious education.

Plaintiffs Jane Doe 9, Jane Doe 10, Jane Doe, 11, Jane Doe 12, Jane Doe 13, Jane Doe 14, Jane Doe 15, Jane Doe 16, Jane Doe 17, Jane Doe 18, Jane Doe 19, Jane Doe 20, Jane Doe 21, Jane Doe 22, Jane Doe 23, and Jane Doe 24 (the "Conversion Victims") sought Freundel's counseling, supervision, and sponsorship for their conversion to Judaism so they could be uniformly considered Jewish across various Jewish faith movements. Throughout extended periods, the aforementioned Conversion Victims followed all the requirements prescribed by Freundel, including: participating in often awkward one-on-one meetings with him, attending lectures, visiting the Kesher Israel Rabbinical Residence, and completing administrative and secretarial tasks there. Several of the Conversion Victims were particularly disturbed by Freundel's requests to do a "practice dunk" in the Kesher Israel/NCM Mikvah that "wouldn't count" for their conversion. Several of the Conversion Victims were so uncomfortable with Freundel that they eventually abandoned the conversion process altogether or completed the process with another rabbi.

Jane Doe 25 was a congregant of Kesher Israel who studied under Freundel to become more observant ("Baal Teshuva"), seeking a more spiritual path in her life. Freundel coerced Jane Doe 25 to immerse in the Kesher Israel/NCM Mikvah purportedly as part of her Baal Teshuva even though such a practice is not typical practice in orthodox Judaism. Jane Doe 25 also sought spiritual counseling from Freundel for various deeply personal struggles in her faith and in her life. Once again, Freundel urged Jane Doe 25 to immerse in the Kesher Israel/NCM Mikvah purportedly as part of her spiritual cleansing.

On September 28, 2014, a woman in charge of maintaining the Kesher Israel/NCM Mikvah's changing area and showers who, upon information and belief, is or was an employee of NCM and/or Kesher Israel, noticed Freundel plugging in a clock inside the mikvah changing area, adjacent to the shower. The woman advised Freundel that there was already a clock on the wall, to which Freundel responded, "This clock will help with the ventilation in the shower." On or about October 12, 2014, the same employee removed the clock, examined it, and found that it contained a hidden camera and memory card.

On or about October 14, 2014, District of Columbia Metropolitan Police Department ("MPD") officers arrested Freundel and criminally charged him with, among other things, voyeurism. The Victims were horrified when Freundel's criminal wrongdoing came to light and they learned that, under the guise of his positions with Kesher Israel, NCM, the RCA, and Towson University, he had lured them to the mikvah for the purposes of sexual exploitation. Subsequent searches of Freundel's home and offices yielded, among other things, several laptop computers, desktop computers, external computer hard drives, digital cameras, memory cards, flash drives, electronically deleted files labeled with women's names, a second clock with a

hidden camera and memory card, a tissue box containing a hidden camera, a computer charger containing a hidden camera, and nude photographs of women.

Freundel used his various positions to lure attractive and unsuspecting young women, including the Victims, to the Kesher Israel/NCM Mikvah, and manipulated them into using it so that he could sexually exploit them. His breach of trust has cut the Victims to their core — shattering their trust in religious and educational institutions that have failed to live up to their reputations for excellence. The Victims, and scores of women like them, have suffered, and will continue to suffer, grave emotional distress and other harm and damages as a direct result of Freundel's actions and Defendants' utter failure to take any steps to prevent him from engaging in these actions. To avoid any further humiliation, the Victims seek to shield their public identities. Given the sexual nature of the conduct at issue and the highly personal and sensitive nature of Defendants' breaches of trust, such relief is plainly warranted.

## ARGUMENT

When plaintiffs face harm, intimidation, or harassment for bringing an action to vindicate their rights, a federal court can exempt them from the requirement of Fed. R. Civ. Proc. 10(a) that their names be stated in the complaint. *See, e.g., Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (stating that "[a]s a general matter, a complaint must state the names of all parties … [h]owever, we may excuse plaintiffs from identifying themselves in certain circumstances"). Whether to allow a plaintiff to file under a pseudonym is within the sound discretion of the trial court. *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995); *see also James v. Jacobsen*, 6 F.3d 233, 238 (4th Cir. 1993). In considering a request to allow a plaintiff to proceed pseudonymously, courts balance the public interest in access to trials with the legitimate interests

of the party making the request. *See National Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 98 (D.D.C. 2008).

In balancing these interests, this Court has employed a five-factor test that considers:

1. Whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;

2. whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;

3. the ages of the persons whose privacy interests are sought to be protected;

4. whether the action is against a governmental or private party; and

5. the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* at 99. A party may proceed anonymously where, as here, the majority of the factors militate in that party's favor. *See id.* Here, four[1] of these factors weigh strongly in favor of this Court granting Plaintiffs' request for leave to proceed pseudonymously.

First, Plaintiffs' objective in proceeding in this manner is primarily to preserve their privacy in this highly sensitive and personal matter. This case involves a particularly humiliating act of sexual exploitation in the context of a highly personal religious observance. Future pleadings are likely to include highly personal and embarrassing accounts of Plaintiffs' private religious observance and Freundel's exploitation of that observance for his own sexual gratification.

Commentators have recognized that involuntarily disclosing the identity of victims of such acts results in real psychological harm to victims far more severe than "mere embarrassment." *See* Paul Marcus & Tara L McMahon, *Limiting Disclosure of Rape Victims'*

---

[1] The age factor does not apply here because the Plaintiffs are adults.

*Identities,* 64 S. Cal. L. Rev. 1020, 1049 (1991). Further, many courts have held that a victim's privacy interest in matters relating to sexual health and reproduction warrant permitting the victim to proceed under a pseudonym. *See, e.g., Doe v. Bodwin,* 326 N.W. 2d 473, 476 (Mich. Ct. App. 1982) (permitting plaintiff to proceed anonymously in case involving sexual impropriety by defendant); *EEOC. v. ABM Indus., Inc.,* 249 F.R.D. 588, 593-94 (E.D. Cal. 2008) (permitting plaintiff to proceed under pseudonym in sexual harassment case); *Roe v. Wade,* 410 U.S. 113, 152-153 (recognizing constitutional right of "personal privacy" in such matters).

Second, Plaintiffs have a reasonable fear of retaliation from Freundel's supporters and the broader Orthodox community. The cultural norms of the Orthodox Jewish community forbid its members of speaking poorly of a rabbi — even when that rabbi has committed wrongful acts against the member. According to The Washington Post and other news media, approximately 10 years ago, around the same time Freundel was leading the charge to construct the Kesher Israel/NCM Mikvah, Kesher Israel responded to persistent complaints, concerns, and criticism of him from members of its congregation by issuing a statement, essentially a religious "gag" order to congregants "to cease to participate in any Lashon Hara,[2] to stop listening to insinuations and attacks, and to disassociate [themselves] from [such slanderous and negative talk about Freundel], and finally to respond forcefully in opposition to Lashon Hara" against Freundel.[3] Orthodox norms also generally do not permit taking legal action against members of the community. Because Plaintiffs have sued Kesher Israel and NCM, they are therefore in reasonable fear of retaliation by supporters and followers of Freundel, Kesher Israel, or NCM.

---

[2] "Lashon Hara" is slanderous, negative talk, which is considered sinful in Judaism.

[3] *See* Peter Herman, *Prominent D.C. Rabbi Accused of Voyeurism Presents a Disturbing Paradox,* Washington Post, Nov. 8, 2014.

7

Third, because there are only private parties in this action, the fourth factor articulated by the court in *Chao* favors allowing Plaintiffs to proceed pseudonymously. *See generally Chao*, 587 F. Supp. 2d at 98. All the Defendants are publicly recognized corporations. This Court has recognized that the reputational concerns apparent with individual defendants generally do not apply to corporations. *See Doe v. De Amigos, LLC*, Civ. Action No. 11-1755 (ABJ) (U.S.D.C. Apr. 30, 2012).

Finally, there is no risk of unfairness to the opposing parties. Plaintiffs have attached, as **Exhibit A** (filed under seal), an affidavit that sets forth their identities. The sealed Affidavit will be served, along with this Motion and the Complaint and all other documents required to be served as initial process by this Court, on Defendants. In addition, Plaintiffs will not object to engaging in any discovery otherwise permitted by the District of Columbia Rules as long as the parties are able to agree to an order that protects Plaintiffs' identities from public disclosure. Conducting this case in this manner results in no risk of unfairness to the Defendants. *See Plaintiff B. v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011) (citing *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005)).

## CONCLUSION

This matter falls squarely within the class of cases in which courts have permitted plaintiffs to proceed pseudonymously. The highly sensitive nature of the factual allegations paired with Plaintiffs' reasonable fears of physical or mental harm weigh strongly in favor of allowing them to proceed pseudonymously. Moreover, because Plaintiffs are willing to disclose their identities in a sealed affidavit and to cooperate with Defendants' reasonable discovery requests, there is no real risk of unfairness to Defendants. Accordingly, Plaintiffs respectfully requests that this Court grant this Motion.

Dated: September 16, 2016

Respectfully submitted,

/s/

Steven J. Kelly (D.C. Bar No. 1021534)
SILVERMAN|THOMPSON|SLUTKIN|WHITE|LLC
201 N. Charles Street, Suite 2600
Baltimore, Maryland 21201
Tel: (410) 385-2225
Fax: (410) 547-2432
skelly@mdattorney.com

Steven D. Silverman (*Pro Hac Vice* Pending)
Stephen G. Grygiel (*Pro Hac Vice* Pending)
201 North Charles Street, Suite 2600
Baltimore, Maryland 21201
Telephone: (410) 385-2225
Telecopier: (410) 547-2432
ssilverman@mdattorney.com
sgrygiel@mdattorney.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, *et al.*<br><br>            *Plaintiffs*,<br><br>v.<br><br>THE GEORGETOWN SYNAGOGUE – KESHER ISRAEL CONGREGATION, *et al.*<br><br>            *Defendants*. | CASE NO. _____ |

## ORDER GRANTING PLAINTIFFS' MOTION TO SEAL

Upon consideration of Plaintiffs' foregoing Motion to Seal, it is this _____ day of July, 2016 hereby

**ORDERED** that Plaintiffs' Motion for Leave to Proceed under Pseudonyms is **GRANTED.** It is further

**ORDERED** that any future documents referring to Plaintiffs by their actual name be filed under seal and that, for all records filed with the Court, Plaintiffs' address shall be listed as either Jane Doe, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, Jane Doe 8, Jane Doe 9, Jane Doe 10, Jane Doe 11, Jane Doe 12, Jane Doe 13, Jane Doe 14, Jane Doe 15, Jane Doe 16, Jane Doe 17, Jane Doe 18, Jane Doe 19, Jane Doe 20, Jane Doe 21, Jane Doe 22, Jane Doe 23, Jane Doe 24, or Jane Doe c/o Silverman|Thompson|Slutkin|White, LLC, 201 N Charles Street, Suite 2600, Baltimore, MD 21201.

SO ORDERED.

_____
United States District Judge
United States District Court for the District of Columbia

Case 1:16-cv-01845-ABJ   Document 2   Filed 09/15/16   Page 11 of 12

# EXHIBIT A
## (FILED UNDER SEAL)